Filed 2/4/14  In re Angel M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANGEL M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANGEL M.,<br><br>    Defendant and Appellant. | F066719<br><br>(Super. Ct. No. 511801)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Clara M. Levers and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J., and Poochigian, J.

On December 18, 2012, appellant, Angel M., admitted allegations set forth in two juvenile wardship petitions filed pursuant to Welfare and Institutions Code sections 777 and 602,[1] respectively, that he violated probation imposed in prior juvenile proceedings by absconding from a placement facility, and that he committed first degree burglary (Pen. Code, §§ 459, 460, subd. (a)) and possession of a concealable weapon (Pen. Code, § 29610). He also admitted that he committed a misdemeanor violation of Vehicle Code section 2800.2, subdivision (a) (evading a police officer), alleged as a felony in the section 602 petition.

At the disposition hearing on February 7, 2013, the juvenile court continued appellant on probation and ordered him committed to juvenile hall for 412 days, with credit for 69 days served in custody, to be detained until his 18th birthday, in January 2014, and with "no good time or early release."

On appeal, appellant's sole contention is that the court abused its discretion in ordering his commitment to juvenile hall. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### *The Instant Substantive Offenses*

Modesto Police Department reports state the following:

Home security video cameras set up in a private home in Modesto recorded the following: On October 15, 2012, one subject approached the house on foot while another parked a car in the driveway and remained in the car. The subject who was on foot entered the house, "ransacked the dressers and night stands [in the master bedroom]," removed a flat-screen television from the living room and, along with the other subject

---

[1] Except as otherwise indicated, all statutory references are to the Welfare and Institutions Code.

[2] Information in this section is taken from the report of the probation officer (RPO).

who had gotten out of the car and appeared to be acting as a look-out, "entered the vehicle with the stolen property and fled the scene." Police later recovered palm and fingerprints from the house, which "matched with [appellant]."

On November 30, 2012, a Modesto police officer made contact with a person who told officers that while he was putting water in the radiator of his vehicle, "several male subjects" in a green car that passed by had "threatened him with handguns." After the officer notified the police department dispatcher, a Stanislaus County deputy sheriff arrived on the scene, and as the deputy was talking to the reporting party, the green car drove by again. Shortly thereafter, the deputy "conducted a traffic stop" of the green car. However, as he approached the car on foot, the car drove off. "Multiple deputies and [Modesto police] officers" gave chase as the driver "attempted to evade them." The driver "made several sharp turns, while running stop signs" before stopping, getting out of the car and running off. Police caught the driver, later identified as appellant, a short time later. A deputy sheriff "re-traced [appellant's] path," and found a nine millimeter semi-automatic handgun lying on the ground. In a search of the car appellant had been driving, police found "a bag containing .38 caliber ammunition and several rounds of hollow point 9 millimeter ammunition."

***The Instant Parole Violation***

On October 8, 2012, appellant absconded from Rite of Passage, a placement facility in San Andreas, California, where he had been placed in July 2012. His whereabouts remained unknown until he was arrested on November 30, 2012.

***Appellant's Prior Adjudications***

In December 2009, appellant was granted informal probation (§ 725, subd. (a)) after it was found he committed misdemeanor vandalism (Pen. Code, § 594, subd. (b)(1)) by "tag[ing] gang graffiti on a taco truck." In May 2010, his informal probation was terminated and he was adjudged a ward of the juvenile court for his "failure to have good

3

conduct and attend school, failure to attend counseling and failure to abstain from the use of drugs." The court ordered him to serve 30 days in juvenile hall and 30 days on the electronic monitoring program.

He was continued as a ward in subsequent proceedings as follows: in July 2010 for possession of a concealable weapon (Pen. Code, § 12101, subd. (a)(1)), after he was found to be in possession of a loaded handgun; in December 2010 for violating probation by possessing marijuana and violating curfew; later that month for violating probation by "getting into a verbal altercation [in juvenile hall] with four other minors that led to a physical altercation," during which juvenile hall staff heard "gang related comments"; in February 2011 for felony possession of a controlled substance, viz., cocaine (Health & Saf. Code, § 11350, subd. (a)), and disobeying a court order, viz., a gang injunction (Pen. Code, § 166, subd. (a)(4)), a misdemeanor; in June 2011 for disobeying a court order and violating probation by, inter alia, failing to attend school and testing positive for marijuana and cocaine; in December 2011, for violating probation by, inter alia, failing to attend school and testing positive for marijuana; and in May 2012, for violating probation by absconding from the placement ordered in the December 2011 proceeding and committing first degree burglary (Pen. Code, §§ 459, 460, subd. (a)). In each of these proceedings, the court ordered appellant committed to juvenile hall. In addition, the court placed appellant on the electronic monitoring program in the July 2010 proceeding and the "Home Commitment Program" in the February 2011 proceeding.

The factual background of the burglary adjudicated in the May 2012 proceeding is as follows: Police, after receiving a report of "possible stolen property" being taken out of a car and "taken into a local residence," attempted to stop a car matching the description of the car involved. The car slowed down, and appellant, who was driving, got out of the car while it was still moving and ran off. The car crashed into the back of another car. Police later caught appellant in a nearby backyard. On his person, police

4

found a gold chain with pendant, diamonds and $300 in currency. The victim of the burglary identified the chain and pendant as belonging to his wife. Police also "contacted[] Norma Garcia," who "consented to a search of her residence." Inside the residence, police found three flat screen televisions. Garcia told officers "a couple of boys she did not know very well came to her residence and asked if they [could] store a television there." The victim of the burglary identified one of the televisions as belonging to him.

### *Additional Factual Background*

Appellant is "listed on the … gang injunction" but he "denied ever associating with a gang." He "did not express remorse" for the instant offenses and he "does not appear remorseful." He stated he was "fed up" with Rite of Passage, and that that placement was not going to help him. His "[s]ignificant problems appear to be dysfunctional family life, negative peer influences, substance abuse, ability to deal with anger [*sic*], lack of respect for laws, lack of respect for property of others and lack of respect for parent(s)."

In recommending juvenile hall placement, the probation officer stated, "While incarcerated in juvenile hall, the minor will be able to avail himself to [*sic*] schooling and earn credits towards his education, as well as be able to participate in any counseling services available. Additionally, the minor may be deemed appropriate for the new Camp facility upon opening in early 2013."

### *Court's Comments*

In ordering appellant committed to juvenile hall, the court's remarks included the following: "… our options [for placement] are commitment to juvenile hall or … out of home placement. We've tried out of home placement with [appellant] on at least two occasions, and, unfortunately, … after absconding from placement on both occasions, [appellant] was involved in residential burglaries, both cases involving firearms. [¶] One

5

of the factors the [c]ourt has to consider, as well as rehabilitation, is the safety of the community.  And punishment is … also considered part of the rehabilitative purpose.  I'm not looking so much at punishment ….  [M]y biggest concern is the safety of the community.  [¶] … [¶] … I see a young man who presents a very severe risk to the community."

After summarizing appellant's history of criminal conduct the court stated further: "…  I think probation's thinking behind [the recommendation that appellant be committed to juvenile hall until his 18th birthday] is that for most young people, if they are still criminally inclined by the time they reach the age of 18, … they're not going to get it and probation is not going to be able to do a whole lot to help them, particularly for someone who's been on probation for several years. And at that point, the adult system will … take over….  '[M]y hope is that every minor that walks in this door is going to follow the probation rules and get their life turned around.  That hasn't happened in [appellant's] case.  And [appellant's] record is appalling.  We've given you chance, after chance, after chance, after chance, numerous probation violations, numerous offenses.  And particularly appalling is the use of weapons and the possession of weapons and the gang injunction violations."

## DISCUSSION

"A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330; accord, *In re Todd W.* (1979) 96 Cal.App.3d 408, 416.)  Appellant contends the juvenile court abused its discretion in ordering a commitment to juvenile hall.  We disagree.

Commitment to DJF requires a two-part showing.  First, "it is required that there be evidence in the record demonstrating probable benefit to the minor …." (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576.)  Second, there must be "evidence supporting a

6

determination that less restrictive alternatives are ineffective or inappropriate." (*In re Teofilio A.*, *supra*, at p. 576.)[3]  An appellate court will not lightly substitute its judgment for that of the juvenile court but rather must indulge all reasonable inferences in favor of the decision and affirm the decision if it is supported by substantial evidence.  (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396; *In re Asean D.* (1993) 14 Cal.App.4th 467, 473 (*Asean D.*).)  "'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.'" (*In re Carl N.* (2008) 160 Cal.App.4th 423, 432 (*Carl N.*).)

"The statutory declaration of the purposes of the juvenile court law is set forth in [Welfare and Institutions Code,] section 202.  [Citation.]  Before the 1984 amendment to section 202, California courts consistently held that '"[j]uvenile commitment proceedings are designed for the purposes of rehabilitation and treatment, not punishment."' [Citation.]  California courts treated a commitment to CYA as 'the placement of last resort' for juvenile offenders.  [Citation.]" (*Carl N.*, *supra*, 160 Cal.App.4th at p. 432.)

"However, '[i]n 1984, the Legislature replaced the provisions of [Welfare and Institutions Code,] section 202 with new language which emphasized different priorities for the juvenile justice system.' [Citation.]  Section 202, subdivision (b) (hereafter section 202(b)) now recognizes punishment as a rehabilitative tool.  [Citation.]  That subdivision provides in part: 'Minors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment, and guidance consistent with their best interest and the best interest of the public.  Minors under the jurisdiction of the

---

**3**     This is the showing required for the most restrictive disposition available in the juvenile justice system, viz., commitment to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, formerly known as the California Youth Authority (CYA).  In our view, the same showing is required for a less restrictive disposition such as the juvenile hall commitment ordered in the instant case.

juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter.*' (§ 202(b), italics added.)" (*Carl N.*, *supra*, 160 Cal.App.4th at p. 432; accord, *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57 (*Lorenza M.*) [section 202 "now recognizes punishment as a rehabilitative tool and emphasizes the protection and safety of the public"].)

"'[Welfare and Institutions Code,] [s]ection 202 also shifted its emphasis from a primarily less restrictive alternative approach oriented towards the benefit of the minor to the express "protection and safety of the public" [citations], where care, treatment, and guidance shall conform to the interests of public safety and protection. [Citation.]' [Citation.] 'Thus, it is clear that the Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety.'" (*Carl N.*, *supra*, 160 Cal.App.4th at pp. 432-433.)

"'[T]his interpretation by no means loses sight of the "rehabilitative objectives" of the Juvenile Court Law. [Citation.] Because commitment to CYA cannot be based solely on retribution grounds [citation], there must continue to be evidence demonstrating (1) probable benefit to the minor and (2) that less restrictive alternatives are ineffective or inappropriate. However, these must be taken together with the Legislature's purposes in amending the Juvenile Court Law.' [Citation.]" (*Carl N.*, *supra*, 160 Cal.App.4th at p. 433.)

At least six factors support the conclusion that a disposition less restrictive than commitment to juvenile hall would be both inappropriate—because any such disposition would not be adequate to hold appellant accountable for his actions and/or provide for the safety and protection of the public—and ineffective. First, appellant stands adjudicated

8

in the instant case of first degree burglary, an offense statutorily designated as "serious" under Penal Code section 1192.7, subdivision (c)(18). (*In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1104, overruled on other grounds in *People v. Hernandez* (1988) 46 Cal.3d 194, 206, fn. 14 [in determining disposition of juvenile offender, "gravity of the offense is always a consideration with other factors"]; § 725.5 [factors to consider in determining appropriate disposition include "the circumstances and gravity of the offense committed by the minor"].) Second, he has a long history of serious and dangerous delinquent conduct, including three felonies—possession of a loaded firearm, another first degree burglary and possession of a controlled substance. Third, he absconded twice from a less secure placement, and after being apprehended the second time he stated he was "fed up" with that placement which, he asserted was not going to help him in any event. Fourth, appellant has failed to reform despite multiple prior juvenile hall commitments, as well as placements on the electronic monitoring program and two commitments to a placement facility. Fifth, the probation officer reported appellant "does not appear remorseful." (Cf. *In re Asean D.* [, *supra*,] 14 Cal.App.4th [at p.] 473 [minor's commitment to CYA upheld where his "continuing refusal . . . to take responsibility for the crimes[] clearly signalled that he constituted a serious danger to the public unless securely confined"]; *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1397 [minor's "unrepentant and cavalier attitude" regarding his offense supported CYA commitment].) Sixth, notwithstanding appellant's denial of any gang involvement, the RPO contained evidence that appellant has engaged in gang-related conduct. (Cf. *In re John H.* (1978) 21 Cal.3d 18, 27 [CYA commitment upheld based in part on minor's gang involvement]; *In re Sergio R.* (1991) 228 Cal.App.3d 588, 602-603 [same].)

Substantial evidence also supports the conclusion that juvenile hall commitment would be of probable benefit to appellant. The record indicates appellant violated probation three times by failing to attend school, and as of December 21, 2012, the date

9

of the RPO, he had not attended school since the second time he absconded from Rite of Passage, on October 8, 2012. In addition, the probation officer noted that appellant could attend school in juvenile hall. Thus, the record shows that appellant had educational needs and that juvenile hall commitment could help him meet these needs. Moreover, we reiterate that appellant has a long history of criminal misconduct, including three felony adjudications. As indicated above, the juvenile court law recognizes punishment as a "rehabilitative tool." (*Lorenza M.*, *supra*, 212 Cal.App.3d at p. 57.) On this record, the juvenile court reasonably concluded that appellant was in need of the kind of "guidance" that comes with "punishment that is consistent with the rehabilitative objectives of [the Juvenile Court Law]" (§ 202, subd. (b)) and that therefore it was probable that he would benefit from commitment to juvenile hall.

Appellant suggests juvenile hall commitment would not benefit him because such a disposition would not address his "present treatment needs [related to] substance abuse, anger management and counseling," and would not provide him with a "treatment plan tailored to address his unique individual needs." We recognize that the record provides ample support for the proposition that appellant is in serious need of services, such as counseling, to address his numerous problem areas, including drug abuse, and that although the RPO stated appellant could participate in any counseling services that were available to juvenile hall detainees, the RPO stopped short of stating such services were in fact available. Indeed, aside from educational services, the RPO said virtually nothing regarding what services and resources would be available to appellant in juvenile hall. Appellant's argument, however, ignores the educational resources available in juvenile hall, as well as the rehabilitative benefits of being held accountable for his actions. And appellant cites no authority, and we are aware of none, for the proposition that in order to meet the "probable benefit" requirement, a disposition must address *all* of appellant's rehabilitative needs. For the reasons set forth above, the record supports the conclusion

10

that substantial evidence supports the conclusion that juvenile hall commitment would be of probable benefit to appellant.

Appellant also argues that the court abused its discretion in ordering commitment to juvenile hall because "the court's order focused on retribution, not rehabilitation." (Emphasis, unnecessary capitalization omitted.)  As best we can determine, appellant bases this claim on the court's remarks quoted in the "Court's Comments" section above. There is no merit to this claim.  The court's remarks display an understanding that the juvenile court law "recognizes punishment as a rehabilitative tool and emphasizes the protection and safety of the public" (*Lorenza M.*, *supra*, 212 Cal.App.3d at p. 57). Nothing in the court's remarks even remotely suggests the court lost sight of the fundamental principle that a commitment cannot be based solely on retribution grounds. The court did not abuse its discretion in ordering commitment to juvenile hall.

## DISPOSITION

The judgment is affirmed.

11