[No. F010673. Fifth Dist. May 15, 1989.]

In re TEOFILIO A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TEOFILIO A., Defendant and Appellant.

COUNSEL

Robert A. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (G. A.), J.*—Defendant Teofilio A., a minor aged 17 years, was found by the juvenile court to have come within the meaning of Welfare and Institutions Code section 602 because he violated Health and Safety Code section 11352 (sale of cocaine). He was committed to the California Youth Authority for a maximum period of five years. He appeals, arguing his commitment to California Youth Authority was not justified. We agree.

FACTS

On April 27, 1988, at approximately 6:15 p.m., Officer Suderman of the Madera Police Department was participating in surveillance with the narcotics enforcement team. Suderman and the team were working at the 500 block of C Street in Madera. Suderman was inside a vacant house. On several occasions, he observed defendant and Sanchez H., a codefendant, outside on the street. Some of these observations were made with the assistance of binoculars.

Officer Suderman saw the two youths approach a parked vehicle. The codefendant began talking to the passenger seated inside. The codefendant motioned to defendant to walk over to where he was. Defendant complied and handed codefendant a white napkin which defendant had in his pocket. Codefendant, in turn, gave it to the passenger in the vehicle. It appeared the passenger handed codefendant money prior to the defendant approaching the vehicle.

The vehicle was then driven away. Officer Suderman contacted Officer Frazier and gave him a description of defendant and codefendant. Officer Frazier was with other officers who were stationed nearby. As Officer Frazi-

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

er approached in a marked police squad car, he passed defendant and saw him drop a napkin. Officer Frazier then stopped the patrol car and arrested codefendant. Officer Frazier found defendant crouching behind a vehicle and arrested him as well.

Two more paper napkins were discovered by the officers at the scene of the arrest. Each napkin contained baggies, which in turn held about 1.6 grams of cocaine, valued at a total of $60. The method of packaging was described as being typical to that used in other illegal drug transactions in the Madera area.

Both defendant and codefendant were transported to juvenile hall after their arrest. No money was found on defendant, but $8 was found on codefendant.

According to defendant, he and codefendant had been playing basketball. They were looking for a mutual friend when the arrest occurred. He denied handing anything to his codefendant on the day of the arrest.

### DISCUSSION

#### Commitment to California Youth Authority

▮▮▮▮ Defendant argues the court abused its discretion by imposing a California Youth Authority (CYA) commitment.

The probation officer's report indicates the minor is a Mexican national, who has lived and worked in the United States as a farm laborer, most of the time with his brother in San Diego and Santa Maria. He had worked in the Madera area in March, and returned to the Madera area in April, shortly before this incident. His brother, Daniel H., who came from Santa Maria to see the defendant when he heard he was in trouble, verified the minor had worked with him during the past two years in San Diego and Santa Maria, and that the minor was in Madera to obtain some documents from a former employer so he could prepare an application for the alien amnesty program.

The analysis and recommendation section of the probation officer's report states: "It appears the minor willfully involved himself in an illegal drug transaction, even though he claims that he is innocent of the offense. It is obvious to this officer that the circumstances surrounding the crime and the facts presented at the contested jurisdictional hearing, indicate that the minor did take part in an illegal cocaine transaction, and did so in a sophisticated manner. It is *believed* that the minor is possessed of a sophisticated

criminal attitude, which was *probably* gained by association and involvement with more criminally sophisticated people involved in the drug subculture in Madera. Therefore, this officer believes that the minor has been deceitful and evasive as regards his actual involvement in this matter. In view that he is tied to the drug subculture, has no family ties to this community and is an *illegal alien* being very mobile as regards travelling from Mexico to California on several occasions during the past three years, he is not viewed as being suitable for probation supervision. In view of the above mentioned circumstances, this officer is inclined to recommend a commitment to the California Youth Authority as the most appropriate disposition in this matter. The Youth Authority can provide a rehabilitative program, including education and counseling for the minor." (Italics added.)

At the dispositional hearing the judge stated he had read and considered the probation officer's report. No further evidence was taken, and though defendant's counsel was present, she presented no argument. The court then made its disposition:

"THE COURT: Is the matter submitted?

"MS. THOMPSON: With the statement the minor continues to deny involvement or that he has a sophisticated criminal attitude, as stated by the Probation Officer on page 4.

"I submit it.

"THE COURT: The Court finds that the welfare of said minor requires that his physical custody be taken from his parents, in that the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training and education for the minor;

"That said offense be deemed a felony.

"The Court hereby orders that said minor be adjudged a Ward of the Juvenile Court. That he be committed to CYA for the aggravated term of 5 years, pursuant to Section 731 of the Welfare and Institutions Code."

The above constitutes the totality of the evidence in the record reflecting the court's consideration of the minor's suitability for commitment to CYA, and its consideration of alternative dispositions.

Legislation that went into effect in 1984 has some bearing on this matter. As a recent appellate decision explains: "In 1984, the Legislature replaced

the provisions of section 202 with new language which emphasized different priorities for the juvenile justice system. (Stats. 1984, ch. 756, §§ 1, 2 pp. 2726-2727.) The new provisions recognized punishment as a rehabilitative tool. (§ 202, subd. (b).) Section 202 also shifted its emphasis from a primarily less restrictive alternative approach oriented towards the benefit of the minor to the express 'protection and safety of the public' (§ 202, subd. (a); *In re Lawanda L.* (1986) 178 Cal.App.3d 423, 433 [223 Cal.Rptr. 685], review den.), where care, treatment, and guidance shall conform to the interests of public safety and protection. (§ 202, subd. (b).)

"Thus, it is clear that the Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety. This interpretation by no means loses sight of the 'rehabilitative objectives' of the Juvenile Court Law. (§ 202, subd. (b).) Because commitment to CYA cannot be based solely on retribution grounds (§ 202, subd. (e)(5)), there must continue to be evidence demonstrating (1) probable benefit to the minor and (2) that less restrictive alternatives are ineffective or inappropriate. However, these must be taken together with the Legislature's purposes in amending the Juvenile Court Law. . . ." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103].)

■ Thus, while there has been a slight shift in emphasis, rehabilitation continues to be an important objective of the juvenile court law. To support a CYA commitment, it is required that there be evidence in the record demonstrating probable benefit to the minor, and evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate.

In *In re Ricky H.* (1981) 30 Cal.3d 176, 182 [178 Cal.Rptr. 324, 636 P.2d 13], our Supreme Court summarized the limitations to the superior court's discretion to commit juvenile offenders to the CYA: "Appellant is correct in his assertion that there are limitations to a superior court's discretion to commit juvenile offenders to the Youth Authority. Section 734 states, for example, that '[n]o ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority.' This court held as a corollary to the mandate of section 734 that '[t]he unavailability of suitable alternatives, standing alone, does not justify the commitment of a nondelinquent or marginally delinquent child to an institution [the Youth Authority] primarily designed for the incarceration and discipline of serious

offenders.' (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].)

"This court in *Aline D.* observed that the statutory scheme guiding the superior court in its treatment of juvenile offenders ' "contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement." ' (14 Cal.3d at p. 564; see also *In re Bryan* (1976) 16 Cal.3d 782, 788 [129 Cal.Rptr. 293, 548 P.2d 693]; *In re Arthur N.* (1976) 16 Cal.3d 226, 237 [127 Cal.Rptr. 641, 545 P.2d 1345].) Nonetheless, there is no absolute rule that a Youth Authority commitment should never be ordered unless less restrictive placements have been attempted. [Citations.]" (Fn. omitted.)

It is, of course, true, as the court stated, that less restrictive placements do not actually have to have been tried. Further, the court in *Ricky H.* noted, if there is evidence in the record to show a consideration of less restrictive placements was before the court, the fact the judge does not state on the record his consideration of those alternatives and reasons for rejecting them will not result in a reversal. We emphasize, however, there must be some evidence to support the judge's implied determination that he sub silentio considered and rejected reasonable alternative dispositions. Here, our review of the record not only shows there was no such evidence, but makes clear other evidence before the court negates the appropriateness of a commitment to the CYA.

The only evidence before the court was from the probation officer's report, and therefore, we must presume the judge predicated his disposition upon this report. However, the report fails to show the probation officer considered less restrictive alternatives or why such alternatives would be ineffective or inappropriate. This leaves the record barren on this crucial issue.

Moreover, the record shows defendant was not a suitable candidate for the CYA: "The courts have persistently shown a realistic concern for commingling of unsophisticated, mildly delinquent minors 'with the more criminally oriented groups of delinquents committed to California Youth Authority,' thereby converting them to trained and sophisticated criminals. (*In re Maria A.* (1975) 52 Cal.App.3d 901, 903 [125 Cal.Rptr. 382].) The premier case authority is *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65], in which our Supreme Court set forth the appropriate guidelines.

" ' "The statutory scheme . . . contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement."

" 'As is evident from the applicable statutes, "Commitments to the California Youth Authority are made only in the most serious cases and only after all else has failed." (Thompson, Cal. Juvenile Court Deskbook, § 9.15, p. 123.) This concept is well established and has been expressed by the CYA itself. In light of the general purposes of juvenile commitments expressed in Welfare and Institutions Code section 502, discussed above, ". . . commitment to the Youth Authority is generally viewed as *the final treatment resource* available to the juvenile court and which least meets the description in the above provision [§ 502]. Within the Youth Authority system, there is gathered from throughout the State the most severely delinquent youths which have exhausted local programs." [Citation.]' (At p. 564.)" (*In re Carrie W.* (1979) 89 Cal.App.3d 642, 646-647 [152 Cal.Rptr. 690]; see also *In re Anthony M.* (1981) 116 Cal.App.3d 491, 502-503 [172 Cal.Rptr. 153]; *In re Jose P.* (1980) 101 Cal.App.3d 52 [161 Cal.Rptr. 400].)

The defendant does not meet this profile. He had no criminal record; his conduct was not aggressive or assaultive; he was not armed; he threatened no one, and did not resist his arrest; his offense was a single $60 sale of cocaine.

The conclusion in the probation report that the defendant showed criminal sophistication is unsupported. The report states that defendant took part in this transaction "in a sophisticated manner." The report continues, "It is *believed* that the minor is possessed of a sophisticated criminal attitude, which was *probably* gained by association and involvement with more criminally sophisticated people involved in the drug subculture in Madera." (Italics added.) Even if true, these conclusions would be a slim reed upon which to base a commitment to CYA without further factual support in the form of excessive and dangerous criminal behavior. However, the probation officer's conclusions are not based on recited facts reflecting a history of dangerous criminal conduct. The recited conclusions are grounded in supposition and speculation, not upon solid evidence. We conclude the evidence does not support the conclusion of criminal sophistication. (*In re Jose P., supra,* 101 Cal.App.3d at p. 59.)[1]

---

[1] It is noted that defendant's counsel presented no argument, including any argument regarding the inappropriateness of a CYA commitment. She seemed to be satisfied with merely repeating the defendant's objection to the probation officer's conclusion that he was sophisticated.

The probation report does mention defendant's alien status. ■ Insofar as defendant's alien status may have been a factor in the court's conclusion, we point out that consideration of such a factor is unauthorized. (*In re Jose P., supra,* 101 Cal.App.3d at p. 58.)

■ We are, of course, aware that a CYA commitment can only be reversed for abuse of discretion, and in evaluating the evidence and making that determination we must apply the substantial evidence test. Whether a commitment in the particular case conforms to the general purpose of the juvenile court law is necessarily included when determining whether a commitment constitutes an abuse of discretion. (See *In re Michael R.* (1977) 73 Cal.App.3d 327, 333-335 [140 Cal.Rptr. 716].)

■ For the reasons we have set forth, the conclusion is compelled that appropriate standards for commitment to the CYA were not applied in this case.

In view of our reversal of the order of disposition, it is unnecessary for us to discuss the alleged incompetence of defendant's counsel at the sentencing hearing resulting from her failure to have raised and vigorously argued for a disposition other than a commitment to CYA.

That part of the judgment determining the court had jurisdiction is affirmed; that part of the judgment ordering commitment to the CYA is reversed and the case is remanded for a new disposition hearing.

Martin, Acting P. J., and Hamlin, J., concurred.