Filed 8/15/14  In re Christina R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CHRISTINA R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F067914 |
| Plaintiff and Respondent, | (Super. Ct. No. JJD065172) |
| v. | |
| CHRISTINA R., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County. Jennifer Conn Shirk, Judge.

Linda K. Harvie, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]        Before Kane, Acting P.J., Franson, J., and Chittick, J.[†]

[†]        Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

The court continued appellant, Christina R., as a ward of the court (Welf. & Inst. Code, § 602) after appellant admitted allegations in a petition charging her with violating probation (Welf. & Inst. Code, § 777).

On appeal, appellant contends: (1) the court violated Penal Code section 654[1] when it calculated her maximum term of confinement (MTC); and (2) the court abused its discretion when it committed her to the Tulare County Youth Facility (youth facility). We will find partial merit to appellant's first contention, modify the judgment accordingly, and affirm as modified.

## FACTS

Appellant was raised by her mother but sometimes was sent to live with her father because of behavior problems.

On January 13, 2011, while appellant's mother was getting ready for work, the then fourteen-year-old appellant got a call from a friend asking her to take some sweats to school for her. Appellant then began yelling at her mother that they needed to leave right away. After appellant's mother told her to wait, appellant walked in and out of the house several times yelling and slamming the door. As her mother called 911, appellant took the battery from the phone, causing the call to disconnect. Appellant and her mother then pushed each other back and forth before appellant walked out of the house again. Appellant's mother locked the door and called 911 again. While her mother was on the phone, appellant broke a window in her bedroom and re-entered the house. When her mother went to investigate, appellant threw a piece of glass that struck her mother on the

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2.

cheek and cut her. Appellant tried to grab the phone out of her mother's hand and yelled, "If I ... go to jail, I will come back and kill you." Appellant was arrested that day and transported to the hospital where she received eight staples on her head to close a laceration she received entering through the broken window.

On January 14, 2011, the district attorney filed a petition charging appellant with assault by means of force likely to produce great bodily injury (count 1/§ 245, subd. (a)(1)), dissuading a witness from reporting a crime (count 2/§ 136.1, subd. (b)), making criminal threats (count 3/§ 422), cutting a utility line (count 4/§ 591), and misdemeanor vandalism (count 5/§ 594, subd. (a)).

On January 25, 2011, after the district attorney amended count 1 to allege an assault with a deadly weapon, appellant admitted the five charges in the petition.

Appellant's probation report indicated that appellant admitted ditching one or two school classes a day, usually to smoke marijuana, and smoking two to three "blunts" a day. Appellant had a 1.6 grade point average. Out of 97 days she was enrolled in school, she had 15 excused absences and 9 unexcused. Appellant admitted associating with gang members but denied being one herself. Additionally, appellant reported being physically abused by her father when she lived with him the previous year and being sexually abused by her stepgrandfather and stepcousin when she was about eight years old.

On February 3 and 7, 2011, Dr. Elisabeth King performed a psychological evaluation of appellant. In her report Dr. King noted that appellant was expelled in middle school after being suspended numerous times for skipping school, profanity, and defiance. Additionally, appellant had recently been dropped from her high school for talking back to teachers and poor attendance. In 2004 appellant was diagnosed with Attention Deficit Hyperactivity Disorder. Dr. King diagnosed appellant with mild Conduct Disorder, childhood-onset, Dysthymic Disorder, early onset, cannabis dependency and with having *borderline and antisocial personality traits*. She

recommended individual and family therapy, substance abuse treatment, and a psychiatric evaluation.

On February 14, 2011, the court denied appellant a grant of deferred entry of judgment (DEJ), placed appellant on probation in her mother's custody, and ordered her to participate in individual, group, and family counseling, alcohol and drug counseling and anger management counseling.

On February 22, 2011, and again on March 29, 2011, appellant tested positive for marijuana.

On April 13, 2011, the probation department filed a first notice of probation violation alleging appellant violated her probation by failing to attend school regularly, follow school rules, follow her mother's directives, and refrain from using illegal substances. On April 14, 2011, appellant admitted violating her probation. On April 28, 2011, the court removed appellant from her home and committed her to the Tulare County Youth Treatment Center Unit for a period of 90 to 180 days.

On July 29, 2011, appellant completed the residential portion of the treatment center program and was released on the aftercare program to reside with her mother.

In November 2011, appellant's mother married.

On January 6, 2012, the probation department filed a second notice of probation violation alleging appellant failed to obey the aftercare program rules and regulations, obey her mother, attend school regularly, abstain from the use of alcoholic beverages and marijuana, and abide by her curfew. On January 9, 2012, appellant admitted violating her probation.

Appellant's probation report noted that since her release on the aftercare program, appellant had been out of compliance with the terms of her probation. During an interview with the probation department, appellant stated that she began smoking marijuana again and violating her probation because she would argue with her mother

4.

and her boyfriend began hitting her. Appellant also reported she was taking two prescription drugs to help her deal with her anger.

The report also noted that a counselor at Turning Point Youth Services told appellant's mother that appellant went to the class "high" and that she "kicked the minor out of the class" because she only went there to socialize. Additionally, therapist Carol Gray told the probation officer that appellant was not cooperative in anger management counseling, she refused to complete her homework, she was not progressing because she chose not to participate, and she needed a more structured setting. In school appellant was failing all but one class in which she was getting a "D," on November 2, 2011, she was transferred from her regular high school to Superior Community School because of poor attendance and defiant behavior, and out of 19 days at Superior Community School she had two excused and eight unexcused absences.

On January 24, 2012, the court continued appellant as a ward of the court and ordered her to serve 365 days in the youth facility.

On August 15, 2012, appellant completed the residential portion of her youth facility commitment and was released to her mother's custody to attend the aftercare program.

On November 9, 2012, the probation department filed a third notice of probation violation alleging appellant violated the terms of her probation by failing to obey her mother's reasonable directives, attend school, and obey the rules of the youth facility and aftercare program. A chrono attached to the notice indicated that during the approximately eight months appellant participated in the youth facility program, she received several disciplinary referrals for various reasons including having to be removed from school, failing to follow instructions, disruptive behavior, using profanity towards staff, and manipulation of staff. Additionally, her mother reported that appellant had been sneaking out of her room at night to see her boyfriend, not returning until 5:00 a.m.,

and that she was defiant. Appellant also was argumentative, failed to respond to directives, and verbally threatened her stepfather.

On November 13, 2012, appellant admitted violating her probation, as alleged.

On December 18, 2012, the court committed appellant to the youth facility for 365 days with the understanding that it might consider releasing her on January 22, 2013.

On January 22, 2013, the probation department filed a report indicating appellant had not received any formal incident reports at the youth facility, had asked to be a "leader," had shown progress in her behavior, and had completed or actively participated in drug and mental health counseling. Additionally, appellant's mother reported seeing a positive change in appellant's behavior.

That same day, the court released appellant on the electronic monitor to participate in the aftercare program.

On March 6, 2013, appellant's stepfather arrived home with his two daughters and found appellant, her boyfriend, his cousin and an odor of marijuana in the house. Appellant's stepfather called appellant's mother and she called the police. Two Tulare police officers responded to appellant's house. While one officer spoke with appellant's mother and stepfather, appellant entered the room and began cursing at her stepfather. Appellant's mother and stepfather both told the officers that they wanted to press charges against appellant for disturbing the peace and the officers arrested her. Appellant attempted to flee but was restrained and handcuffed by one of the officers. As the officer carried appellant to the patrol car, appellant kicked one officer two times in the groin area and the other in the face. After being secured in the patrol car, appellant kicked out both rear passenger windows.

On March 8, 2013, the district attorney filed a petition charging appellant with two counts of resisting an executive officer (counts 1 & 2/§ 69), two counts of misdemeanor vandalism (counts 3 & 4/§ 594, subd. (a)), and disturbing the peace (count 5/§ 415(2)).

On March 14, 2013, after count 1 was amended to name both officers as victims, appellant admitted the resisting an executive officer offense charged in that count and one vandalism offense.

Appellant's probation report concluded that a custodial program would not address the true cause of appellant's delinquency. It recommended a grant of probation with supervision provided by the family preservation unit, intensive family counseling and that the family enroll in therapeutic behavioral services.

In a probation department memo filed on April 2, 2013, the probation department noted that appellant's mother wanted her to be placed with her father and did not want her to return home. Although appellant's father was reluctantly willing to take appellant, the department found that placement there would not be appropriate because he was a registered sex offender.

A memo from the Tulare County Health and Human Services Agency filed on April 3, 2013, noted that appellant, who was then in custody, refused to take her medication, refused mental health services on two occasions, and that her behavior in the unit was deteriorating. On that same date, the court ordered that appellant be placed in a suitable relative's home, foster care or a group home.

On May 2, 2013, appellant was released to her mother on the wraparound program.

A review filed on July 19, 2013, noted that although appellant initially did well after her release, she began having difficulty adjusting to her return home and participating in the wraparound program. Appellant's mother reported that on numerous occasions appellant did not come home, failed to abide by her curfew, failed to attend school, and appeared to be under the influence of marijuana. School records dated June 10, 2013, indicated that appellant attended only 10 out of 22 days she was enrolled in school, was failing all her classes, and was suspended six times. Additionally, appellant admitted continuing to use marijuana, she tested positive for marijuana two times, and

7.

she failed to enroll in drug or alcohol counseling. Appellant attended only two therapy sessions and each time she became upset and left early. The authoring probation officer recommended appellant be detained pending the filing of a notice of probation violation.

On July 22, 2013, a notice of probation violation was filed alleging appellant failed to obey school rules and regulations, failed to attend drug and alcohol counseling, failed to "abide by her caregiver," and tested positive for marijuana.

On July 29, 2013, appellant admitted violating her probation, as alleged.

On July 30, 2013, during a probation department interview, appellant admitted arguing with her teachers, violating her curfew, seldom letting her mother know where she was going, spending time by herself smoking marijuana, and forgetting to go to Turning Point. She also stated that her school was "half assed" and that she did not want to be there. Her mother reported appellant was very defiant and would yell at her and kick holes in the wall. Appellant also would be gone most of the time and frequently stayed out all night.

On August 12, 2013, the court set appellant's MTC at seven years and committed her to the youth facility for up to 365 days.[2]

## DISCUSSION

*The Section 654 Issues*

Appellant appears to contend that because all the offenses she admitted in the January 14, 2011, petition arose from her "continuing argument with her mother," section

---

[2] Appellant's maximum term of confinement of seven years consisted of four years for her assault offense, a consecutive eight months for her dissuading a victim offense (one-third the middle term of two years), a consecutive eight months for her criminal threats offense (one-third the middle term of two years), a consecutive four months for her misdemeanor cutting a utility line offense (one-third of the maximum term of one year), four months for her misdemeanor vandalism offense (one-third the maximum term of one year), eight months for her resisting an executive officer offense (one-third the middle term of two years) and four months for her most recent misdemeanor vandalism offense (one-third the maximum term of one year).

654: (1) required the court to use the offense with the most custody time, i.e., her assault offense, to calculate her MTC; and (2) precluded the court from using all, or at minimum, some of the terms for the offenses underlying that petition in calculating this term. With respect to the March 8, 2013, petition, appellant contends section 654 precluded the court from using the term for her vandalism offense in calculating her MTC because she committed that offense and the resisting an executive officer with the singular objective of avoiding capture. Respondent contends this court lacks jurisdiction to address these issues because appellant did not timely appeal from the dispositional order relating to each of these petitions and appellant failed to list the case numbers of these dispositional orders in the underlying notice of appeal in this matter. We will find partial merit to appellant's contention.

Section 654, subdivision (a) provides:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.…"

Section 654 applies to juvenile sentencing. (*In re Michael B.* (1980) 28 Cal.3d 548, 556, fn. 3.) Further, "a court acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654." (*People v. Hess* (2000) 22 Cal.4th 290, 294-295.)

> "[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 354.) "'An appellate court may "correct a sentence that is not authorized by law whenever the error comes to the attention of the court." [Citation.]' [Citation.] An unauthorized sentence is just that. It is not subject to a harmless error analysis. Nor does it ripen into a sentence authorized by law with the passage of time. Imposition of an unauthorized sentence is an act which is in excess of a court's jurisdiction and may be the subject of later review *even after affirmance of the judgment on direct appeal*. [Citations.]" (*In re Birdwell* (1996) 50 Cal.App.4th 926, 930 (*Birdwell*), italics added.)

In accord with *Birdwell*, we reject respondent's contention that this court may not consider appellant's claim that the court imposed an unauthorized sentence because she did not appeal from the two dispositions at issue or list their case numbers in her notice of appeal.

> "[S]ection 654 prohibits punishment for two crimes arising from a single indivisible course of conduct. [Citation.] If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.] The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence. [Citation.]" (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525.)

With respect to the first petition, appellant's offense of cutting a utility line was based on her conduct in removing the battery from her mother's phone when she initially called 911. Additionally, her offense of preventing or dissuading a victim from reporting a crime could only have been based on this conduct also because after appellant took the battery, her mother was able call 911 while appellant was outside the residence. Since these two offenses were based on the same act and the dissuading a victim offense provided for the "longest term of imprisonment[,]" the court violated section 654 when it used a four-month term that corresponded to appellant's cutting a utility line offense in calculating her MTC.

Further, the court could reasonably have found that appellant's objective in breaking the window to her mother's house[3] was simply to get back inside the house. It also could reasonably have found that appellant's objective in throwing a piece of glass at her mother was to exact immediate retribution from her for having called 911 and that her

---

[3]    The underlying petition alleged that appellant committed misdemeanor vandalism by breaking the window.

objective in threatening to kill her mother was to intimidate her into not cooperating with authorities whom she knew would be responding to her mother's 911 call. Thus, the record supports the court's implicit finding that appellant had independent objectives in committing the assault, criminal threats, and vandalism offenses charged in the January 2011 petition, and its use of the terms corresponding to these offenses in calculating appellant's MTC did not violate section 654.

Turning to the second petition, although it is clear appellant's intent in committing the resisting an executive officer offense was to avoid capture, when she broke the two windows in the patrol car she was handcuffed, in the back of a secure patrol car, with little hope of escaping. The trial court could reasonably conclude from these circumstances that in committing the vandalism offense appellant's objective was simply to exact some sort of retribution against the officers for arresting her. Accordingly, we reject appellant's contention that section 654 barred the trial court from using the term corresponding to her vandalism count in that case in calculating her MTC. Nevertheless, we will modify appellant's MTC because section 654 barred the court from using the four-month term corresponding to her cutting a utility line offense in calculating that term.

***Appellant's Commitment to the Youth Facility***

a. <u>The Record Supports the Court's Decision to Commit Appellant to the Youth Facility</u>

Appellant contends the court abused its discretion in committing her to the youth facility because the weight of the evidence established that: (1) she would not benefit from a commitment there; (2) a commitment there would not meet her reformatory needs; (3) a commitment to the long-term program had already been tried twice and those familiar with her agreed it had not worked either time; (4) the court improperly relied on appellant's attitude and her safety in committing her there; and (5) the court's decision was based on inaccurate facts. We will reject these contentions.

11.

Under Welfare and Institutions Code section 725.5, the juvenile court must consider the circumstances and gravity of the offense committed by the minor. The court must consider the broadest range of information in determining how best to rehabilitate a minor and to afford him or her adequate care. A juvenile court's order may be reversed on appeal only upon a showing the court abused its discretion. Appellate courts must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330.)

The record must be viewed in light of the purposes of juvenile law. As described in Welfare and Institutions Code section 202, those purposes include rehabilitation, treatment, guidance, punishment as a rehabilitative tool, and protection of the public. (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 575-576.) The court may also consider the need to hold the minor accountable for his or her actions (Welf. & Inst. Code, § 202, subd. (b)), and the community's interest in being protected from crime during rehabilitative efforts (Welf. & Inst. Code, § 202, subd. (a); *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57-58).

"To support a CYA commitment, it is required that there be evidence in the record demonstrating probable benefit to the minor, and evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate." (*In re Teofilio A.*, *supra*, 210 Cal.App.3d at p. 576.)

In a period of approximately two and a half years appellant was adjudicated of several felony offenses and she violated her probation four times despite having been in custody 735 days during that time period. Further, when not in custody, appellant's school attendance and behavior were poor, she would not attend the court-ordered counseling classes, she would smoke marijuana daily, abscond regularly from her mother's house, and she was out of her parents' control.

At the youth facility, appellant would be forced to attend school and family and drug counseling, she would not be able to smoke marijuana, and she would benefit from the structure and discipline inherent in a secure placement. The court also could reasonably find that a commitment to the youth facility program would hold appellant accountable for her offenses and that it would protect the public in general and her mother specifically from appellant's unmitigated anger. Thus, the record refutes appellant's contention that there was no evidence she would benefit from a commitment to the youth facility or that a commitment there would not meet appellant's reformatory needs.

There is also no merit to appellant's claim that committing her to the youth facility was an abuse of discretion because she had previously been placed there, and those familiar with her, i.e., her mother and the probation department, agreed previous commitments there had not worked. A probation report is advisory only (*People v. Johnson* (1999) 70 Cal.App.4th 1429, 1432) and the fact that the probation department or a parent did not believe a placement would work is not a basis for challenging the court's placement decision.

Nor does the record support appellant's contention that her prior commitments to the youth facility had been ineffective. Although appellant experienced a few behavioral problems during her first long-term commitment there, during her second commitment to the facility she performed so well that the court allowed her out of the program after little more than a month. The court could view this last commitment as evidence that appellant could control her behavior when she wanted to and as proof that her primary problem was her attitude, rather than her abuse of marijuana. It also provided support for the court's finding that she would benefit from a second long-term commitment to the youth facility. Additionally, the court could reasonably find that simply because a prior commitment to the youth facility had not been completely effective in reforming

13.

appellant, did not mean appellant would not receive some benefit from another commitment there.

b.    The Court Properly Relied on Appellant's Attitude in Committing her to the Youth Facility

During appellant's disposition hearing on August 12, 2013, the following colloquy occurred:

> "THE COURT:  To be candid, counsel, I don't know if the drugs are the big problem or if it's her attitude that's the big problem.  If drugs are the big problem, I might be inclined to send her to the short term drug treatment program.  If it's her attitude that's the big problem, then she needs to be in the youth facility.
>
> "[DEFENSE COUNSEL]:  Could you give me a moment, your honor?"
>
> (Whereupon the proceedings went off the record.)
>
> "THE MINOR:  Are you serious?
>
> "THE COURT:  In response to her question that may have been rhetorical, yes, I am serious, which leads me to believe it may be attitudinal more than drugs.... "

Appellant relies on the foregoing quote to contend the court abused its discretion in committing her to the youth facility because it relied on her bad attitude.  To the extent appellant contends the court was prohibited from relying on her attitude in committing her to the youth facility, she is wrong.  Welfare and Institutions Code section 725.5 provides that in making its dispositional order the court may consider "relevant and material evidence."  The quoted comments by the court indicate it was concerned with whether appellant's overriding problem was marijuana abuse which caused appellant to engage in other negative behaviors or whether it was simply her recalcitrant attitude that was at the heart of her ongoing behavior problems.  As noted previously, appellant's ability to perform well during her month-long, second long-term commitment to the youth facility provided the court with strong evidence that appellant's principal problem was her attitude.  In these circumstances, appellant's attitude was clearly a relevant and

material consideration for the court in determining the appropriate disposition for appellant. Accordingly we reject appellant's contention that the court improperly relied on her attitude in committing her to the youth facility for a third time.

c. The Court did not Rely on Inaccurate Information to Deny Appellant a Commitment to the Short Term Program

During appellant's disposition hearing, in response to defense counsel's suggestion that the short term program would be the best in-custody option for appellant the court stated,

> "The problem is, you've directed me to her diagnosis, and that was something that I considered when I was reading the report and I did not think it would be in her best interest to go home. *Having a borderline personality disorder really limits her ability to program in the drug treatment portion because she doesn't want to do it, so she's not doing it.* And that's what my big concern is. And I'm thinking that if we give more time and there can be more of an effort to start out addressing the mental health concern, she may have an opportunity to succeed. This is her last chance before she's an adult."

Appellant was never diagnosed with borderline personality disorder. Thus, she cites the above comments to contend the court abused its discretion when it denied her request to be placed in the youth facility's short-term program because the denial was based on inaccurate information. We disagree.

Appellant was diagnosed with having borderline and anti-social personality traits and it appears the court misspoke and was referring to these traits in the comments quoted above. In any event, the court could reasonably find it inappropriate to commit appellant to the short-term program because it was of too short duration to deal with all of appellant's issues and it apparently did not include an adequate mental health component that the court believed appellant needed.

d. The Court Properly Considered Appellant's Safety in Committing her to the Youth Facility

On July 26, 2013, after admitting she violated her probation, appellant told the court she had weaned herself off her "mental health meds" and that she had refused to

15.

speak with mental health because she did not want to start taking them again. The court responded, in pertinent part: "... If you don't want to see mental health, I won't make you see mental health, but if I can't be sure that you're okay out of custody, I need to be able to protect you...."

Appellant cites the above quotation to contend that "[a]lthough the protection and safety of the delinquent minor is a valid concern (*In re Abdirahman S.* (1997) 58 Cal.App.4th 963, 969), it must not be the main concern." We summarily reject this contention because appellant has not cited any evidence that supports her assertion that this was a main concern of the court in committing her to the youth facility. Accordingly, for all the reasons discussed above we conclude that the court did not abuse its discretion when it committed appellant to the long-term program at the youth facility.

## DISPOSITION

The judgment is modified to reduce appellant's MTC from seven years to six years eight months and the juvenile court is directed to correct its paperwork accordingly. As modified, the judgment is affirmed.