Filed 4/7/15  In re Abraham S. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re ABRAHAM S., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B256570 (Super. Ct. No. 2013036000) (Ventura County) |
| THE PEOPLE,  Plaintiff and Respondent,  v.  ABRAHAM S.,  Defendant and Appellant. | |

Abraham S. appeals the juvenile court's order committing him to the Department of Corrections and Rehabilitation, Department of Juvenile Justice (DJJ) for a maximum of nine years.  He also appeals the denial of his motion to modify his DJJ commitment (Welf. & Inst. Code,[1] § 779).  Appellant contends the court abused its discretion in committing him to DJJ.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant was born in July 1996.  In February 2009, he was detained on a charge of battery on school property (Pen. Code, § 243.2, subd. (a)(1)).  He was subsequently referred to a program but failed to complete it.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

Later that same year, appellant was granted diversion (§ 654.2) for separate incidents of grand and petty theft (Pen. Code, §§ 484, subd. (a), 487, subd. (a)). In 2010, he was charged with possessing marijuana (Health & Saf. Code, § 11357, subd. (e)) and was referred to a program he failed to complete.

In June 2011, appellant pointed what appeared to be a sawed-off shotgun at someone's chest and demanded his property. The court sustained a petition charging him with robbery (Pen. Code, § 211) and ordered him to serve 365 days in juvenile hall. Less than a month later, appellant and his companions robbed multiple victims of their cell phones by intimidating them with a BB gun. The court sustained a subsequent petition charging him with four counts of robbery and other crimes. The probation department recommended a DJJ commitment, but the court ordered an additional 365-day commitment to juvenile hall.

In June 2013, appellant was found in violation of his probation for, among other things, using a controlled substance, possessing a weapon, and associating with gang members. He was ordered to spend an additional 120 days in juvenile hall. The following August, he violated probation again by assaulting other juvenile hall residents. The court vacated the remainder of the previous commitment and ordered a commitment of 210 days in juvenile hall with credit for 76 days served.

Less than a month after his release from juvenile hall in October 2013, appellant and two companions approached 17-year-old Sammy G. and asked him if he was from the "Via Campesina tagging crew." Sammy responded that he used to hang out with "VCP" but no longer did so. Appellant called Sammy a "bitch." Appellant and his companions surrounded Sammy and hit him in the face. After Sammy was pushed to the ground, appellant and his companions repeatedly hit and kicked him until neighbors intervened. Sammy suffered a concussion, a fractured nose, and psychological trauma as a result of the incident.

Appellant was apprehended nearby and brought to the scene of the assault, where Sammy identified him as one of his attackers. The other assailants, one of whom

2

was 17-year-old Luis G., were arrested shortly thereafter. Appellant was charged in a subsequent petition with assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). He admitted the allegations of the petition and the matter was set for a disposition hearing.

Appellant admitted attacking Sammy with Luis because Sammy and Luis did not get along. He also admitted drinking alcohol and smoking marijuana that night, but did not believe he had "any dependencies." He did not know Sammy and denied the attack was gang motivated. He did not feel a DJJ commitment was necessary because he regretted his actions and had "learned his lesson." He was "on track to graduate" from high school and "would appreciate one last opportunity to show that he can succeed on probation."

The probation department recommended termination of appellant's probation and a DJJ commitment for a maximum term of nine years. At the disposition hearing, appellant's attorney asked the court to order a "lengthy" juvenile hall commitment and argued that the criminal sophistication of DJJ inmates and the prevailing gang culture at DJJ would harm rather than help appellant. The court adopted the probation department's recommendation, reasoning that "[i]t took [appellant] a whole month after his release from custody after two separate 365-day commitments for two separate armed robberies to attack this victim in an unprovoked attack and give him a concussion, psychological trauma, broken nose, [among] other things. And so it indicates to me that long-term [juvenile hall] commitments . . . are not having the desired effect . . . ."

Appellant moved for reconsideration of his DJJ commitment pursuant to section 779. He offered that he had been doing well in juvenile hall and that his delinquent behavior was due to his parents' physical and psychological abuse and "his long-standing drug use[.]" He also referred to Sammy's statement to the police as proof that he only became involved in the attack after Luis initiated it.

3

Appellant testified at the hearing on his reconsideration motion. He said his behavior had changed for the better as the result of a "reality check of what is really going on right now and knowing that this is actually happening." He also offered that Luis had initiated the assault on Sammy and that he "ended up jumping in" because he "thought that was being a friend, and that's not even being a friend at all. . . . I should have just walked away."

Appellant's attorney argued that appellant's disposition should be proportional to Luis's commitment to juvenile hall. Counsel also offered that David M. Kruge, the Chief Probation Officer in Kern County, had indicated that appellant "look[ed] like a good candidate" for placement at the Larry J. Rhoades Kern Crossroads Facility (Crossroads) in Bakersfield. Counsel described Crossroads as "a secure placement facility run by a Probation Department but it's more of a camp-like setting . . . and they have some different components than our facility has." The prosecutor was "not opposed to getting more information about" Crossroads and said he "would be willing to delay his disposition or sentencing until such time as we have those answers."

The court continued the hearing for probation to prepare a report regarding whether Crossroads was "a viable alternative in the first instance." The court wanted to know "whether in Probation's judgment it provides anything more than has been or could be provided in the juvenile facilities. . . . [I]'m not satisfied at present that either of those is true. And, frankly, I'm not real inclined to reward the behavior before me by sending someone to summer camp."

The probation department subsequently reported that commitments at Crossroads are limited to 24 to 36 weeks, followed by one year of intensive probation and subsequent regular probation supervision. Crossroads provides multiple services based on the minor's determined needs and includes school instruction, substance and behavioral counseling, vocational training, and opportunities for community service. The probation department noted that Ventura County offered similar services and that appellant had already been offered those services. The department concluded "there is

4

nothing in the minor's behavioral history that would suggest his behavior upon his release from a 36 week commitment would be any different. Likewise, there is nothing to suggest that the minor's violent behavior would not present itself while in another county operated juvenile detention facility." The department also noted that the probationary phases of the program would be problematic because appellant does not live in Kern County or have any family there. Aside from the program's unsuitability, the department believed appellant's placement in Crossroads "would require a memorandum of agreement (MOA) between Kern and Ventura Counties to accomplish such an unprecedented commitment, and no such MOA exists." The probation department accordingly recommended that the court impose the nine-year DJJ commitment, which had been stayed pending the court's ruling on appellant's reconsideration motion.

Kruge submitted a letter to the court indicating that appellant had been deemed suitable for placement at Crossroads, at a cost of $332 a day. The letter did not address the lack of an MOA or how appellant would be supervised during the probationary phases of the program.

At the outset of the continued hearing, the court indicated it was inclined to rely on the probation department's report. Appellant's attorney argued that as an alternative to Crossroads the court should continue to stay the DJJ commitment and have appellant "do sort of a graduated programming component" under the probation department's supervision. At the conclusion of the hearing, the court determined that the previously-imposed DJJ commitment "is the appropriate course" and accordingly lifted the stay on that commitment.

## DISCUSSION

Appellant contends the court abused its discretion in ordering his commitment to DJJ. He claims the record does not demonstrate the commitment would probably benefit him or that a commitment to Crossroads would have been ineffective or inappropriate. We disagree.

5

A juvenile court's decision to commit a minor to the DJJ will be reversed only if the court abused its discretion. (*In re Jose T.* (2010) 191 Cal.App.4th 1142, 1147.) We must indulge all reasonable inferences in favor of the decision and affirm the decision if supported by substantial evidence. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.) In determining whether substantial evidence exists, we "examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 (*Michael D.*); see also § 202.)

Section 202 dictates that juvenile offenders be committed "in conformity with the interests of public safety and protection, [to] receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (§ 202, subd. (b); *Michael D., supra*, 188 Cal.App.3d at p. 1396.) In amending the law in 1984, "'. . . the Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety.' [Citation.]" (*In re Carl N.* (2008) 160 Cal.App.4th 423, 433 (*Carl N.*).) Nevertheless, "the Legislature has not abandoned the traditional purpose of rehabilitation for juvenile offenders." (*In re Julian R.* (2009) 47 Cal.4th 487, 496.) "To support a [DJJ] commitment, it is required that there be evidence in the record demonstrating probable benefit to the minor, and evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate." (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576 (*Teofilio A.*); § 734.) In determining the appropriate disposition for the minor, the juvenile court considers "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)

The court did not abuse its discretion in ordering appellant's commitment to DJJ. Contrary to appellant's claim, the record supports the conclusion that his commitment to Crossroads would be ineffective or inappropriate. Aside from the question whether such a commitment was even possible, the court noted that the program's services were similar to those appellant had already been offered. Appellant's

6

complaint that the court relied on its impression that "Crossroads was not harsh enough" is unavailing because rehabilitative punishment was a proper consideration. (*Carl N., supra*, 160 Cal.App.4th at p. 433.) Appellant previously had ample opportunities to succeed in less restrictive placements, but failed to reform. In light of the lengthy history and serious nature of his juvenile delinquency, the court did not err in finding that no less restrictive placement would have been effective or appropriate and that a DJJ commitment was necessary to protect public safety.

The record also supports the conclusion that appellant will probably benefit from a DJJ commitment. Appellant attributes his delinquency to the results of drug use and familial abuse, but DJJ has programs to address those issues. (See, e.g., *Michael D., supra*, 188 Cal.App.3d at p. 1397.) His reply brief highlights evidence of past problems at the California Youth Authority (CYA, now DJJ), yet that evidence does not demonstrate that minors presently committed to DJJ cannot benefit therefrom.[2] Although appellant's recent behavior has been positive, the record supports a conclusion that his negative behavior would likely resume, as it had in the past, once he no longer faced the threat of a DJJ commitment. Accordingly, the court did not abuse its discretion in finding that appellant was in need of rehabilitative punishment and would probably benefit from such punishment. (§§ 202, 734.)

Appellant also complains that the court "never acknowledged the lack of proportionality" between his commitment and Luis's commitment to juvenile hall. But the court's commitment decision is not based merely upon appellant's most recent offense. Moreover, the fact that appellant, unlike Luis, had no personal dispute with the victim arguably renders appellant's participation more callous than Luis's. We also know

---

[2] After the briefs were filed, appellant filed a request for judicial notice of the second amended complaint and consent decree in a 2003 case challenging CYA policies, practices and procedures. He asserts that notice is proper under Evidence Code sections 452, subdivision (d)(1) and 459. He did not, however, ask the juvenile court to take notice of this information. Because the documents were not before the juvenile court, the request for judicial notice is denied. (*People v. Sanders* (2003) 31 Cal.4th 318, 323, fn. 1.) In any event, a 10-year-old complaint and consent decree provide little insight into current conditions at DJJ.

7

nothing about Luis's prior history of delinquency, if any.  Under the circumstances, the lack of proportionality between the two commitments is of no moment.[3]

        The judgment is affirmed.

        <u>NOT TO BE PUBLISHED.</u>


                               PERREN, J.


We concur:



        GILBERT, P. J.



        YEGAN, J.

---

[3] Appellant's analogy to *Teofilio A., supra*, 210 Cal.App.3d 571, is plainly inapt. The minor in that case had no history of delinquency.  Moreover, the offense for which he was committed to CYA "was a single $60 sale of cocaine."  (*Id.* at p. 578.)

David Worley, Judge

Superior Court County of Ventura

_____


Stephen P. Lipson, Public Defender, Michael C. McMahon, Chief Deputy, William Quest, Senior Deputy Public Defender, for Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jonathan J. Kline, Nathan Guttman, Deputy Attorneys General, for Respondent.