Filed 11/19/15  In re P.D. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re P.D., a Person Coming Under the Juvenile Court Law. | H041559 (Santa Clara County Super. Ct. No. 3-13-JV40242B) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>            v.<br><br>P.D.,<br><br>        Defendant and Appellant. | |

### STATEMENT OF THE CASE

On August 15, 2013, the Santa Clara County District Attorney filed a juvenile wardship petition alleging that minor P.D. possessed a knife on school grounds (Pen. Code, § 626.10, subd. (a); count 1), exhibited a knife (Pen. Code, § 417, subd. (a)(1); count 2), possessed a razor blade on school grounds (Pen. Code, § 626.10, subd. (a); count 3), and exhibited a razor blade (Pen. Code, § 417, subd. (a)(1); count 4).  On June 15, 2014, minor admitted counts 1 and 3, and counts 2 and 4 were dismissed.  On July 14, 2014, the juvenile court declared minor a ward of the court and placed minor on probation with various conditions, including 52 days of electronic monitoring.

On July 16, 2014, minor removed his ankle monitor and absconded from his family home. A notice of probation violation was filed. On July 31, 2014, minor admitted that he violated the probation condition pertaining to electronic monitoring. Following a contested disposition hearing on September 4, 2014, the juvenile court continued minor as a ward of the court and ordered minor to be placed in a group home.

Minor now appeals from the disposition order, arguing that the juvenile court abused its discretion in placing him in a group home. As set forth below, we will affirm.

**BACKGROUND**

*The Disposition Report*

A disposition report, prepared by minor's probation officer on August 29, 2014, recommended that minor be placed outside of his family home. The disposition report explained that minor was subject to the Electronic Monitoring Program (EMP) between August 2013 and June 2014, but minor failed to abide by the rules of the EMP. The disposition report specified that minor left his family home without permission in October 2013, minor tested positive for cocaine and marijuana, minor cut off his ankle monitor and absconded from the family home in December 2013, minor hid a knife under his mattress in March 2014, and minor again cut off his ankle monitor and absconded from the family home in March 2014. The disposition report noted that minor's mother and stepfather had criminal histories and had abused drugs, and that minor's mother did not know the identity of minor's biological father. A psychological evaluation, which was included in the disposition report, explained that minor's behavior warranted a diagnosis of Oppositional and Defiant Disorder, characterized minor's home environment as unhealthy, and advised that minor would benefit from a highly structured environment where he could be closely monitored. The disposition report noted that minor had two uncles, but minor's mother indicated that neither uncle was a suitable option for placement. Specifically, minor's mother said that an uncle who lived in Orange County

2

"[had] too many kids" and "would be unable to deal with [minor] as well," and she said that she "would not allow" minor to live with the other uncle.

### *The Disposition Hearing*

At the beginning of the disposition hearing on September 4, 2014, the juvenile court stated that it had "read and considered" the disposition report, and it admitted the report into evidence. Minor's probation officer, Kara Gerdes, testified at the disposition hearing.

Ms. Gerdes testified that her recommendation was for placement. She explained her recommendation: "Given the opportunities we have already utilized, the psychological evaluation, and other dispositional options available . . . , I think that placement is in [minor's] best interest at this time." She emphasized that it was in minor's "best interest" to "be placed outside the home." She testified that someone of minor's age and background would typically be placed in a San Jose group home.

Ms. Gerdes testified that minor had been granted five opportunities to participate in electronic monitoring, but minor was never successful on electronic monitoring. She explained that minor cut off his ankle monitor, ran away from his family home, and failed to attend school.

When asked if she had evaluated "options for [minor] to live at his mother's house and receive community-based services," Ms. Gerdes testified that she had "considered a recommendation of referral to the Edge Peak Program." Ms. Gerdes determined that a referral to the Edge Peak Program was not a suitable option, explaining in part that the "Edge Peak Program does not address any of the issues in the home that are ongoing, mainly the minor's gang-entrenched neighborhood and the lack of appropriate parental supervision and guidance." Although minor could be subject to electronic monitoring if he were referred to the Edge Peak Program, Ms. Gerdes determined that the Edge Peak Program was not appropriate because minor should not remain living in his family home.

When asked to describe the concerns she had if minor stayed in his family home, Ms. Gerdes responded: "[Minor] does not remain in the family home . . . . [H]is five total EMP commitments have resulted in four warrants. I'm concerned about his further involvement in his gang-entrenched neighborhood. . . . I think that [minor's mother and stepfather] are unable to control him and need to learn techniques to help them parent him in a better fashion."

Ms. Gerdes testified that she and minor's mother discussed whether minor's two uncles were possibilities for placement. Ms. Gerdes never contacted the uncles to determine if they were suitable options for placement.

At the conclusion of the disposition hearing, the juvenile court ruled that it would adopt the recommendations in the disposition report. The juvenile court explained: "I just don't think [minor] has the tools to be successful in the community. I'm not sure he's going to be successful in placement. It will be up to him. You know, I think we need to avoid something more serious, which could be out of state placement eventually. [Minor] could be at the Ranch depending on what happens. I just am convinced that at this point in [minor's] life, he will fail . . . if we try to do the Edge [Peak] Program or something in the community. He doesn't want to be at home, and I think . . . that he would probably run away from home, even with those additional services." The juvenile court further explained: "I think that while we're . . . cognizant of graduative [*sic*] sanctions, it's not an escalator, it's an elevator that goes to the appropriate floor to try to bring the services necessary to make a minor . . . successful." The juvenile court concluded its comments by noting that placement was in minor's "best interest," and it ordered minor to be placed in a San Jose Group home.

## DISCUSSION

Minor contends that we must reverse the disposition order because the juvenile court abused its discretion in placing him in a group home. Specifically, minor contends

4

that the placement decision was an abuse of discretion because the juvenile court "failed to consider less restrictive and more family-like settings," namely placement with one of minor's uncles or "allowing [minor] to remain at home while attending the Peak Edge [*sic*] program with . . . electronic monitoring in place." (Capitalization omitted.) As explained below, minor has not shown an abuse of discretion.

### *Standard of Review*

We review the juvenile court's placement decision for abuse of discretion. (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473.) " ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' " (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.) When determining whether there was such substantial evidence, "we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

### *Legal Principles*

"The juvenile court's goals are to protect the public and rehabilitate the minor." (*In re Kacy S.* (1998) 68 Cal.App.4th 704, 711.) Welfare and Institutions Code section 202, subdivision (b) thus provides: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. . . . When the minor is no longer a ward of the juvenile court, the guidance he or she received should enable him or her to be a law-abiding and productive member of his or her family and the community."

5

Minor's argument relies upon Welfare and Institutions Code section 727.1, subdivision (a). That subdivision provides: "When the court orders the care, custody, and control of the minor to be under the supervision of the probation officer for foster care placement pursuant to subdivision (a) of Section 727, the decision regarding choice of placement shall be based upon selection of a safe setting that is the least restrictive or most family like, and the most appropriate setting that is available and in close proximity to the parent's home, consistent with the selection of the environment best suited to meet the minor's special needs and best interests. The selection shall consider, in order of priority, placement with relatives, tribal members, and foster family, group care, and residential treatment pursuant to Section 7950 of the Family Code."

The statutory scheme guiding the juvenile court in its treatment of juvenile offenders " ' "contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement." ' " (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 577.) However, "less restrictive placements do not actually have to have been tried." (*Ibid.*) "[I]f there is evidence in the record to show a consideration of less restrictive placements was before the court, the fact the judge does not state on the record his consideration of those alternatives and reasons for rejecting them will not result in a reversal." (*Ibid.*) Reversal is unwarranted if there is "some evidence to support the judge's implied determination that he sub silentio considered and rejected reasonable alternative dispositions." (*Ibid.*)

### *The Juvenile Court Did Not Abuse its Discretion*

The placement decision here did not constitute an abuse of discretion. Contrary to minor's assertion, the record shows that the juvenile court considered less restrictive and more family-like settings before placing minor in the group home.

6

The record demonstrates that the juvenile court considered and reasonably rejected a disposition in which minor would remain in his family home, attend the Edge Peak Program, and be subject to electronic monitoring. At the disposition hearing, minor's probation officer testified that minor had been granted five opportunities to participate in electronic monitoring, those five opportunities had "resulted in four warrants," and minor was never successful on electronic monitoring. The disposition report described three occasions on which minor cut off his electronic-monitoring bracelet and absconded from the family home. Minor's probation officer specifically testified that it was not in minor's "best interest" to "return home on [electronic monitoring] with Edge Peak," explaining in part that the "Edge Peak Program does not address any of the issues in the home that are ongoing, mainly the minor's gang-entrenched neighborhood and the lack of appropriate parental supervision and guidance." Given the foregoing evidence, particularly the evidence of minor's past failures on electronic monitoring, the juvenile court reasonably concluded that minor would "probably run away from home" and "fail . . . if we try to do the Edge [Peak] Program." The record thus belies minor's argument that the juvenile court failed to consider a disposition in which minor would remain in the family home, attend the Edge Peak Program, and be subject to electronic monitoring. The record shows that the juvenile court reasonably rejected such a disposition.

Although the juvenile court did not discuss minor's uncles when issuing its placement decision, there is "some evidence to support the judge's implied determination that he sub silentio considered and rejected" placement with the uncles. (*In re Teofilio A,* *supra,* 210 Cal.App.3d at p. 577.) The juvenile court stated that it had "read and considered" the disposition report. The disposition report noted that minor had two uncles, but minor's mother indicated that neither uncle was a suitable option for placement. Specifically, minor's mother said that an uncle who lived in Orange County

7

had "too many kids" and "would be unable to deal with [minor] as well," and she said that she "would not allow" minor to live with the other uncle. The disposition report also included a psychological evaluation, which described minor's diagnosis of Oppositional and Defiant Disorder and advised that minor would benefit from a highly structured environment where he could be closely monitored. Given the evidence that minor would benefit from close monitoring in a highly structured environment, combined with minor's mother's statements regarding the unsuitability of minor's uncles, it was not unreasonable for the juvenile court to reject placement with one of the uncles. Moreover, the juvenile court's comments at the disposition hearing showed that it was aware of and abided by its obligation to consider less restrictive settings, such as placement with one of the uncles. The juvenile court specifically stated that it was "cognizant of graduative [*sic*] sanctions," but "it's not an escalator, it's an elevator that goes to the appropriate floor to try to bring the services necessary to make a minor . . . successful." On the record before us, we must conclude that the juvenile court considered placement with one of the uncles and reasonably rejected such a disposition.

Finally, minor very briefly argues that the placement decision was an abuse of discretion because the juvenile court failed to consider "whether group home placement might be traumatic and detrimental to [minor's] well-being in light of his prior negative group home experience."[1] This argument is meritless. The record shows that the juvenile court engaged in a careful analysis before making its placement decision. The juvenile court specifically stated that it was considering minor's "best interest" and selecting a disposition designed to make minor "successful." We cannot conclude that the juvenile court abused its discretion in placing minor in a group home.

---

[1] Minor does not provide a record citation for any evidence showing that he had a "prior negative group home experience." Nor does he describe any evidence suggesting that he had a "prior negative group home experience." Although minor's counsel commented that minor "was in a group home," counsel's comments were not evidence.

**DISPOSITION**

The disposition order is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
ELIA, J.

_____
GROVER, J.

*People v. P.D.*
**H041559**