Filed 8/29/14  In re C.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>C.S.,<br><br>     Defendant and Appellant. | A139971<br><br>(Contra Costa County<br>Super. Ct. No. J1300771) |

C.S., a minor, appeals from an order of wardship pursuant to Welfare and Institutions Code section 602 following the juvenile court's finding that he committed the offenses of misdemeanor second degree burglary (Pen. Code, §§ 459, 460, subd. (b)) and misdemeanor petty theft (Pen. Code, §§ 484, 488).  Specifically, he contends that the juvenile court abused its discretion by ordering an out-of-home placement at disposition pursuant to section 726 of the Welfare and Institutions Code.[1]   Finding the juvenile court's placement order reasonable under the circumstances of this case, we affirm.

## I.  BACKGROUND

On August 14, 2013, the Contra Costa County District Attorney's office filed a delinquency petition alleging that C.S. committed  second degree commercial burglary

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

and petty theft, both misdemeanors, on or about October 17, 2012. The charges stemmed from a shoplifting incident involving C.S. and another boy. On the date in question, C.S. reportedly entered a Macy's store in Antioch with the second minor, placed two pairs of jeans underneath his clothing, and attempted to leave the store without paying for the merchandise. The second minor acted in a similar fashion, placing one pair of jeans down his pants. C.S. had a pocket knife in his possession at the time of his arrest, but no wallet or money. Both boys claimed they were runaways and took the clothing because they had nothing to wear. The total value of the merchandise found on C.S., which was recovered by Macy's, was $80.00. On September 19, 2013, following a contested jurisdictional hearing, the juvenile court found the charges to be true.

The dispositional hearing was held on October 2 and 3, 2013. In its dispositional report, the Contra Costa County Probation Department (Probation) reported that the minor had been placed on informal probation in 2007 (at the age of 10) following charges of second degree burglary and vandalism. After completing counseling and community service, C.S.'s informal probation was successfully terminated in November 2007. While this current matter was pending, C.S. was additionally cited by the police in January 2013 for trespassing in a building belonging to the Pittsburgh Unified School District. Utilizing the Juvenile Assessment and Intervention System (JAIS), Probation determined that the minor had a high risk for reoffending.

In addition, the minor admitted that he argued weekly with his parents and had stolen money from them on two occasions, incidents which led to confrontational arguments. After an argument about his drug use, ongoing laziness, failure to attend school, disrespectful behavior, and poor attitude which occurred a few days before his October 2012 arrest, C.S. left home and was staying in a shed in the backyard of a vacant house. After his arrest, he was released to his mother's care, but left immediately and did not return home for a month. C.S. was placed on home supervision when he appeared in court for arraignment on September 6, 2013. However, he was terminated from the program and remanded to juvenile hall on September 11, 2013, due to his behavior at

home.  Specifically, C.S.'s mother reported that he was not listening to her, was not attending school, and was otherwise failing to follow the home supervision rules.

With respect to schooling, the minor reported that he attended Pittsburgh High School (PHS) for ninth and part of tenth grade, but was then moved to Black Diamond High School (BDHS) because he was getting into trouble for poor attendance and marijuana possession at school.  PHS records indicate that C.S. completed 20 credits during ninth grade and showed 28 unexcused absences over 74 days enrolled.  He earned zero credits at BDHS, failing to attend school for the Spring 2013 semester.  While at BDHS, he received discipline referrals for marijuana, disrupting class, fighting, and truancy.  He attended Live Oak High School for one month in Fall 2013, until being taken into custody.  According to C.S., although they initially pushed him to go back to school in 2013, his parents were " 'ok' " with him working in his uncle's tire shop instead.  He gave his earnings to his father to help pay off the $700 civil fine the family paid to Macy's as a result of the shoplifting incident.  Since being held at juvenile hall, C.S. attended school at Mt. McKinley on a daily basis.

According to the report filed by Probation, C.S. admitted to regular marijuana and alcohol use, drinking malt liquor once or twice a week.  He stated that he had alcohol poisoning in June 2013, when he blacked out due to intoxication.  C.S. also admitted trying methamphetamine and spice in September 2013, and he tested positive for marijuana in court on September 6, 2013.  During his ninth grade year at PHS, he bought and sold marijuana, including packing and distributing bundles of the drug.  In the summer of 2013, after an "emotional" conversation with his mother, C.S. made an effort to stop abusing drugs, but it "did not last very long."

At home, C.S.'s father struggled with addiction as well.  He and C.S. reportedly attended a Native American retreat in an attempt to address their substance abuse issues.  Although C.S.'s mother reported C.S.'s father had improved, she had, at one point, taken her children to Mexico for several months to get away from his alcoholic and abusive behavior.  Additionally, C.S. reported that—while he was in eighth and ninth grade—his parents would hit him with a sandal or belt as physical discipline after receiving calls

3

from school about his behavior. The parents attempted to deal with C.S.'s drug use and negative attitude by telling him he would have to live elsewhere, sending him to an aunt when his behavior was out of control, and withdrawing privileges. According to Probation, however, the father's alcoholism and ongoing tension at home affected the minor's motivation to do well. Further, C.S.'s mother reported that the minor's recent stay in juvenile hall was a good influence on her son. She believed he would do better if he stayed away from his drug-involved friends.

C.S. was screened by the Orin Allen Youth Rehabilitation Center in September 2013 and rejected because his level of delinquent behavior and risk to the community was not seen as sufficient to warrant commitment. Probation also concluded that the minor was not appropriate for out-of-home placement, but would benefit from community resources. Because it felt that community resources had not been exhausted, Probation recommended that C.S. be placed on home supervision while being required to get counseling, attend school, and perform community service. Probation also recommended substance abuse services for C.S. and counseling for the minor's parents.

At the dispositional hearing on October 2, 2013, the deputy district attorney indicated that she was not in agreement with Probation's recommendation. She was particularly concerned about the ongoing substance abuse in the family home and C.S.'s continued misbehavior after his October 2012 arrest, including his inability to remain on home supervision for more than five days after his arraignment. According to C.S.'s father, although he had attended treatment for alcohol abuse in the past, there was still alcohol in the family home sometimes. In addition, Probation testified that there were out-of-home placements available that specifically focused on sobriety. At the conclusion of the October 2 hearing, the juvenile court concluded as follows: "Frankly, based upon this report and the information contained in it, in addition to things stated here in court today, I don't believe that [C.S.] can accomplish everything he needs to do in terms of substance abuse problems, in terms of education, in terms of relationship issues with his family—I don't think the family, and this is not a criticism of the family— I do believe mom and dad love him and I believe he loves his family. I don't think there

4

is any question. But I don't think the family can provide the supervision and structure he needs to accomplish everything he needs to accomplish for his own betterment." The juvenile court also noted that the prior informal intervention in 2007 had failed to rehabilitate the minor. The court therefore indicated that it was intending to order out-of-home placement so that C.S.'s "needs in terms of substance abuse, education, therapy and family reunification can be met." The matter was continued to the next day so that Probation could submit revised recommendations and an updated case plan.

At the conclusion of the October 3, 2013, dispositional hearing, the juvenile court adjudged C.S. to be a ward of the juvenile court and ordered an out-of-home placement with a maximum period of confinement of 14 months. In addition, the court specifically found that continuance in the home would be contrary to the minor's welfare, and ordered that C.S. be removed from his parents pursuant to section 726 subdivision (a)(3). Finally, the court opined that—given the immediate danger to the minor and the particular circumstances of the case—any lack of efforts to maintain the minor in his home prior to removal was reasonable. A timely notice of appeal brought the matter before this court.

## II. REMOVAL FROM PARENTAL CUSTODY

**A.** *Statutory Framework and Standard of Review*

When a juvenile court declares a minor a ward of the court, it may not remove that minor from physical custody of a parent or guardian unless, after a hearing, it finds one of the following: "(1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor[;] [¶] (2) That the minor has been tried on probation while in custody and has failed to reform[; or] [¶] (3) That the welfare of the minor requires that custody be taken from the minor's parent or guardian." (§ 726, subd. (a).) A juvenile court faced with making such a determination at a delinquency disposition should "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford [that minor] adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 (*Robert H.*).) Thus, for instance, in addition to "other relevant and material evidence," a juvenile court

5

making a dispositional order should consider "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)

Moreover, a dispositional order should be consistent with the twofold purpose of the juvenile court law: (1) "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court" and (2) "to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public." (§ 202, subd. (a); see also *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 (*Michael D.*).) Thus, dispositional orders for delinquent minors shall provide for "care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (§ 202, subd. (b).) When making such orders, the juvenile court is free to evaluate credibility, weigh the evidence, and accept or reject the recommendations of the probation officer. (*In re Robert H., supra,* 96 Cal.App.4th 1317 at p. 1329.)

We may reverse the juvenile court's dispositional order only upon a showing of abuse of discretion. (*In re Robert H., supra,* 96 Cal.App.4th 1317 at pp. 1329-1330.) Thus, when reviewing such an order, "[w]e must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." (*In re Michael D., supra,* 188 Cal.App.3d at p. 1395.) In the context of this particular case, appropriate application of the standard of review mandates the conclusion that "[i]t is not the responsibility of this court to determine what we believe would be the most appropriate placement for a minor. This is the duty of the trial court, whose determination we reverse only if it has acted beyond the scope of reason." (*In re Khamphouy* (1993) 12 Cal.App.4th 1130, 1135.)

**B.      *Determination Under Section 726***

In the present case, C.S. argues that the juvenile court abused its discretion in ordering an out-of-home placement for him given the petty nature of the offense, his parents' commitment to help him, the availability of less restrictive alternatives, the

endorsement of those alternatives by several "high-level" professionals, and the lack of any immediate danger to him if a less restrictive placement was tried. We agree that the shoplifting offense, itself, might not have been serious, but our examination of the totality of the evidence convinces us that the trial court's decision to deny C.S. home supervision was reasonable. First, as the juvenile court recognized, the minor had a "very serious" substance abuse issue. Despite the pendency of these proceedings and his "honest effort" to stop his substance abuse in the summer of 2013, he was unable to do so. Rather, he regularly used marijuana and alcohol; blacked out in June 2013 due to intoxication; tried methamphetamine and spice in September 2013; and he tested positive for marijuana in court on September 6, 2013. Further, when he was only in the ninth grade, he bought and sold marijuana, including packing and distributing bundles of the drug.

Additionally, although C.S.'s parents were committed to helping him, the evidence supports the juvenile court's conclusion that they were simply unable to provide the supervision and structure that he needed. C.S.'s father was struggling with his own alcohol addiction and, despite prior attempts at treatment, continued to bring alcohol into the home. The parents' previous attempts at supervising and controlling C.S.'s self-destructive behaviors—including the use of corporal punishment—had proved ineffective. Further, C.S.'s record of school attendance for the last several years while in his parents' care was dismal. His parents allowed him to work rather than attend school in Spring 2013. And, even when the minor was on home supervision in September 2013, he refused to attend school. On the occasions when he did attend, his behavior was repeatedly disruptive. Indeed, C.S.'s mother admitted that her son had benefitted from his time in juvenile hall, where he was attending school every day.

Moreover, the juvenile court's prior informal intervention in 2007 had failed to successfully rehabilitate the minor, he was cited for trespassing on school property while this matter was pending, he failed home supervision less than a week after it was ordered at his arraignment in September 2013, and his JAIS profile indicated that he was at high risk for reoffending. Under such circumstances, it was reasonable for the juvenile court to determine that less restrictive alternatives to out-of-home placement would be

7

ineffective in the minor's rehabilitation, despite the opinion of Probation and other professionals to the contrary. (See *In re Robert H., supra,* 96 Cal.App.4th at p. 1329 [juvenile court may reject recommendation of probation officer].) And, his serious substance abuse, his history of running away and living on the streets, and the inability of his parents to control his dangerous behaviors supported the need for immediate removal.

Finally, while the juvenile court law contemplates a progressively restrictive and punitive series of dispositions, there is no absolute rule that the court may not impose a particular commitment until less restrictive placements have actually been attempted. (*In re Teofilo A*. (1989) 210 Cal.App.3d 571, 577 (*Teofilo A.*); see also *John L. v. Superior Court* (2004) 33 Cal.4th 158, 186 (*John L.*) [juvenile court has "broad discretion at disposition" to implement section 202 priorities; "statutory scheme no longer *requires* that placement alternatives run from the least to the most restrictive, and that they be 'ratcheted up' gradually based on the person's behavior at earlier levels"]; *In re Eddie M.* (2003) 31 Cal.4th 480, 507 [juvenile placements need not follow any particular order, "including from the least to the most restrictive"; court does not necessarily abuse its discretion by "ordering the most restrictive placement before other options have been tried"].)[2] Rather, so long as there is some evidence that the court considered and reasonably rejected less restrictive alternative dispositions, the juvenile court's order must be upheld. (*Teofilo A., supra,* 210 Cal.App.3d at p. 577.) Such evidence was clearly present in this case.

In sum, the juvenile court on this record properly could have concluded that out-of-home placement was appropriate for a minor with escalating substance abuse issues, abysmal school attendance, ongoing parental conflict, and a home environment that was unable to supply the supervision and structure necessary for his rehabilitation. We therefore conclude the juvenile court acted within its discretion when ordering C.S. into out-of-home care.

_____

[2] In this regard, the minor's reliance on *In re Arthur N.* (1976) 16 Cal.3d 226, is misplaced as subsequent statutory changes have undermined its reasoning. (*John L., supra,* 33 Cal.4th at p. 186.)

### III. DISPOSITION

The judgment is affirmed.

 

_____
REARDON, J.

We concur:

_____
RUVOLO, P.J.

_____
HUMES, J.*

 

* Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.