Filed 7/29/22 In re A.R. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | B310645 <br> (Los Angeles County <br> Super. Ct. No. YJ40133) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.R., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher J. Smith, Judge. Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

————————————————

A.R. (minor) challenges a dispositional order committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) for a maximum term of 30 months.[1]  Minor contends the juvenile court abused its discretion, because there was no substantial evidence that a less restrictive placement would be inappropriate or ineffective.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 2019, the Los Angeles County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, alleging minor committed the following offenses, all felonies involving a child under the age of 14: aggravated sexual assault of a child (sodomy) (count 1; Pen. Code, §§ 269, subd. (a)(3), 286, subd. (c)(2)–(3) & (d)); sodomy by use of force (count 2; Pen. Code, § 286, subd. (c)(2)(B)); aggravated sexual assault of a child (oral copulation) (count 3; Pen. Code, §§ 269, subd. (a)(4), 287, subd. (c)(2)–(3) & (d));

---

[1] At the same disposition hearing, the court also ordered minor's older brother, R.R. committed to DJJ custody for a maximum term of 30 months.  R.R. filed a separate notice of appeal, and we issue a separate opinion (B310550) deciding R.R.'s appeal.

forcible oral copulation (count 4; former Pen. Code, § 288a, subd. (c)(2)(B)); forcible rape (count 5; Pen. Code, § 261, subd. (a)(2)); aggravated sexual assault of a child (rape) (count 6; Pen. Code §§ 261, subd. (a)(2) & (6), 269, subd. (a)(1)); and continuous sexual abuse (count 7; Pen. Code, § 288.5, subd. (a)).[2] Minor was initially detained in juvenile hall.[3]

The charges stemmed from minor sexually abusing S.P. over a two-year period, beginning when S.P. was six years old and minor was thirteen years old. Minor and his family (an older brother, mother, and stepfather) lived next door to S.P.'s family for many years. The two families were very close, and minor's mother regularly babysat S.P. from infancy. The abuse came to light in November 2018, when S.P. told her older sisters, and S.P.'s mother contacted the police. Under questioning, minor admitted to raping and sodomizing S.P. on at least ten occasions over the two-year period. He initially claimed that the first incident happened when S.P. came over to play video games with him; she proposed watching a sex video with him and then they had sex.

In a report filed June 25, 2019, probation officer Gisell Osorio recommended that minor be removed from home and placed into DJJ custody. According to the report, minor was in need of a secured setting, DJJ offered a wide range of resources, and minor could benefit from services including "the

---

[2] Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

[3] On June 07, 2019, the court entered a restraining order preventing minor from contacting or coming within 100 yards of the victim.

continuation of his education, job skills, sex offender therapy, and the victim of crime on victim classes."

At a pre-plea hearing on June 25, 2019, the court ordered probation to reassess minor's housing situation and to transport minor to his counseling intake assessment. Probation officer Osorio's July 18, 2019 report stated minor's mother was willing to have minor reside with her and that she would transport him to court-ordered appointments. Nevertheless, "Due to the severity of the case and the emotional, physical, and long-term damage the minor caused the victim this officer's recommendation remains the same."

On July 24, 2019, the court ordered minor detained at home under the probation department's Community Detention Program (CDP), with specified restrictions, including: remaining inside the home, no visitors, no cell phone, no internet other than for school, and no social media use. The CDP officer was ordered to determine whether counseling, community service and other activities were to commence, continue, or cease while minor was on CDP.

The CDP probation officer, Philip Mikhael, reported that minor's participation in CDP was initially positive. On October 30, 2019, however, minor left class without permission and, when probation detained minor, a cell phone was found in his backpack. After this incident, probation officer Mikhael recommended terminating CDP and detaining minor in juvenile hall; however, the juvenile court ordered minor to remain in the CDP program. Probation officer Osorio consistently recommended sending minor to DJJ.

On August 14, 2020, after an argument with his stepfather, minor cut off his ankle monitor and left home without

4

permission. Mother reported he was staying with a family friend and refused to come home. The court issued an arrest warrant, and mother brought minor to juvenile hall on August 20, 2020.[4] According to the arrest detention report, minor had run away for six days but decided to turn himself in. Afterwards, he did not incur additional violations and continued to participate in online school. The report recommended returning minor to CDP, noting that family dynamics between minor and his stepfather might warrant family counseling. The court ordered minor to remain in juvenile hall.

On October 15, 2020, minor admitted to counts one and six of the petition, and the court sustained those allegations. The remaining counts were dismissed with a *Harvey* waiver, permitting the court to consider the dismissed counts at disposition. (*People v. Harvey* (1979) 25 Cal.3d 754, 758.)

At the disposition hearing, the prosecution played the videorecorded interviews of S.P., A.R., and R.R, and entered the DVDs and transcripts of those interviews into evidence. S.P's family members provided victim impact testimony. S.P.'s

---

[4] The warrant detention report included information that there were significant problems with minor living with his mother and stepfather. The report noted that: minor says he argues with his stepfather on everything, and stepfather told him he did not deserve to live; mother stated she wanted her son to be detained; mother reported (at some unspecified time) minor stole $2,000 from a home safe and spent most of it on electronic devices and clothing; mother also reported minor had been verbally abusive towards mother and stepfather, threatened to assault her during an argument, and once went to the kitchen and grabbed a knife.

therapist also testified and read a portion of S.P.'s trauma narrative.

The court heard testimony from Dr. Krys Hunter, senior supervising psychologist at DJJ's Sex Behavior Treatment Program, and Michael Farmer, a parole agent who explained the process for determining DJJ projected release dates and parole board hearings. Dr. Dennis Brown, the director of the Ness Counseling Center, testified about the Ness Counseling Center's programs and the extent to which A.R. and his older brother, R.R., had participated. Dr. Brown testified that minor was in a group-based program at the Ness Counseling Center until his August 2020 runaway attempt. According to Dr. Brown, minor did well and was a group leader. Minor's attorney called Dr. Adam Weisman, a psychiatrist who evaluated offenders for adult and juvenile courts. Dr. Weismann testified about an evaluation report he wrote in 2019, evaluating A.R. and recommending a one-year residential treatment program.

At the conclusion of argument, the juvenile court ordered minor committed to the DJJ for a maximum of 30 months. The court also ordered R.R. committed to DJJ for the same term. The court noted that "this is probably one of the most egregious sexual conduct cases I've had since I've been on the bench as a juvenile court officer." Acknowledging the brothers' positive behavior on CDP, the court emphasized that they needed a comprehensive level of treatment, and that DJJ was the most suitable place for both of them.

# DISCUSSION

When exercising its discretion on the proper disposition of a minor adjudged to be a ward under section 602, the juvenile court considers a broad range of information. The record must be viewed in light of the purposes of juvenile law. (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 5.) Those purposes include rehabilitation, treatment, guidance, punishment as a rehabilitative tool, and protection of the public. (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576 (*Teofilio A.*).) The court considers a probation officer's report and any other relevant and material evidence that may be offered, including statements by the victim and, for victims who are minors, the victim's parents. (§ 706.) The court must take into account the circumstances and gravity of the offense committed by the minor, as well as the minor's age and previous delinquency history. (§ 725.5.) The court may also consider the need to hold the minor accountable for his or her actions. (§ 202, subd. (b); *In re N.C.* (2019) 39 Cal.App.5th 81, 89 [court properly considered "the role punishment should have in minor's rehabilitation given the seriousness of his offense and his tendency to succumb to the negative influences of peers"].)

"One of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement . . . and progressing to . . . placement at the DJJ." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250; see also *In re N.C., supra,* 39 Cal.App.5th at pp. 85–86.) "Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted." (*Ibid.*)

Courts do not necessarily abuse their discretion in ordering a juvenile to the most restrictive placement before other options have been tried.  (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)  It is error, however, for the juvenile court to fail to consider less restrictive alternatives to a DJJ commitment.  (*Teofilio A., supra,* 210 Cal.App.3d at p. 577.)  Commitment to the most restrictive placement, such as DJJ, is permissible so long as there is substantial evidence demonstrating "a probable benefit to the minor from a DJJ commitment and of the inappropriateness or ineffectiveness of the proposed less restrictive alternatives."  (*In re N.C., supra,* at p. 86 [affirming order committing first time offending minor to a maximum of nine years in DJJ after minor admitted one count of forcible oral copulation and one count of sexual battery of an intoxicated 17 year old high school student]; *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)

We review a commitment order for abuse of discretion, and find an abuse of discretion when necessary factual findings are not supported by substantial evidence.  (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 908.)  In our review of the appellate record, we draw all reasonable inferences in favor of the juvenile court's order.  (*In re Angela M., supra,* 111 Cal.App.4th at p. 1396.)  "[W]e consider whether substantial evidence supports the juvenile court's commitment order consistent with the purpose of the juvenile court law.  [Citations.]  Substantial evidence, in turn, 'must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.'  [Citation.]"  (*In re Miguel C., supra,* 69 Cal.App.5th at p. 908.)

In the case at hand, we find substantial evidence supports the trial court's conclusion that a 30-month commitment to DJJ

would be of probable benefit to minor and that the proposed less restrictive alternatives were inappropriate or ineffective. (*In re N.C., supra*, 39 Cal.App.5th at p. 86; *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 484–485.)

We note that minor does not contend on appeal that the trial court erred in finding that placement with DJJ would provide him with a probable benefit. The trial court's finding in this regard was clearly supported by substantial evidence: Dr. Weisman, minor's own witness, confirmed during his testimony that minor would need at least one year of structured out of home treatment at a program certified by the California Sex Offender Management Board (CASOMB), and such a program is offered by DJJ.[5]

We discuss the CASOMB program to provide context for the alternatives considered by the trial court. Dr. Hunter testified that the Sex Behavior Treatment Program (SBTP) offered by DJJ is certified by CASOMB, and gave details about the program, supported by a publication describing the SBTP. The DJJ operates two facilities with SBTP, which is a therapeutic living unit devoted to the comprehensive treatment of resident juvenile sex offenders. During the first 30 to 45 days in the program, juveniles are in an orientation unit, completing a comprehensive SBTP assessment, resulting in an initial individual treatment plan. The assessments are carried out by psychologists, social workers and other staff for strengths, weaknesses, risk levels, trauma history and other factors to outline individual dynamic risks as well as treatment objectives

---

[5] The Board reviews programs and requires that treating staff have at least 30 hours of training, and to continue receiving training requirements to maintain certification.

for progress and successful completion of the SBTP. After orientation, juveniles in the SBTP program live in a dormitory-style setting, attend school, and participate in a comprehensive mix of "individual and group therapy, psycho-educational resource groups, journals and homework, group therapeutic exercises, biblio-therapy, video therapy, family counseling, family forums, plant and pet care, and therapeutic recreation and leisure activities." Participants in the program move through seven stages, starting with understanding and taking responsibility for their past and current behaviors; learning healthy ways to manage thoughts, feelings and behaviors; demonstrating progress in making positive behavioral changes; and preparing for re-entry into the community.

Minor raises the spectre of DJJ's imminent closure[6] and the possibility that minor would be exposed to negative influences at DJJ. But both dangers are more speculative than concrete, and we are not inclined to second-guess the juvenile court's considered evaluation of those risks. (See *In re Juan G.* (2003) 112 Cal.App.4th 1, 6 ["The function of an appellate court is

---

[6] As explained in *In re Miguel C., supra,* 69 Cal.App.5th at page 907, the California Legislature in 2020 passed "juvenile justice realignment" legislation substantively rewriting major portions of juvenile court law. (See Stats. 2020, ch. 337 (Sen. Bill No. 823).) Portions of the disposition hearing took place in December 2020, when Senate Bill 823 had been signed but had not yet taken effect. Dr. Hunter testified that DJJ would close intake effective July 2021, but no date had been identified for a full closure of DJJ. Minor does not contend that the juvenile court's commitment order violated any of the code sections amended under realignment.

not to reweigh the evidence and substitute its judgment for that of the juvenile court"].)

Minor's contention on appeal is that the trial court abused its discretion in ordering placement with DJJ because insufficient evidence supports that less restrictive alternatives were inappropriate or ineffective. We disagree. Both the probation department and minor's own expert, Dr. Weisman, believed minor needed to be in a residential program specializing in adolescent sexual offender treatment. After evaluating minor in late fall 2019, Dr. Weisman wrote: "Given minor's background and results of psychological testing, if the petition is sustained, it may be necessary for this minor to be placed in a residential setting for at least one year. This would provide the minor time to focus on the instant offense, victim empathy, and developing appropriate social skills." Dr. Weisman also noted that based on the evaluation and minor's history, "without a formalized placement, he may revert to old habits."

Dr. Weisman's 2019 evaluation letter listed a number of possible programs other than DJJ's programs, stating the alternatives "may meet [minor's] placement goals." However, by the time he testified at the disposition hearing in January 2021, Dr. Weisman did not know whether the residential programs he had previously identified were still offering sex offending therapy for adolescents. In fact, some programs did not obtain or renew the CASOMB certification because the certification process is too rigorous. Dr. Weisman also lacked personal knowledge about any of the residential programs, conceding he identified programs in his 2019 evaluation letter using a manual of treatment programs.

Even assuming a residential program offering CASOMB-certified residential adolescent sex offender treatment existed

11

and had availability, there was still substantial evidence for the court's determination that such a program would be inappropriate for minor. The record evidence demonstrates the ineffectiveness of a community-based treatment approach with an organization like the Ness Counseling Center, where minor had been placed. Dr. Hunter testified that community-based treatment is less effective because the individuals remain in the environment that fostered the offending behavior or attitude. Minor concedes that the admitted offenses were serious and showed a shocking lack of empathy for S.P. During questioning, minor claimed S.P. initiated the sexual acts by asking to watch a sex video with minor. Even after receiving positive probation reports for close to a year, and doing well at the Ness Counseling Center, minor ran away from home in August 2020, removing his ankle monitoring device after an argument with his stepfather. Both the seriousness of the offense, minor's seeming lack of insight, and minor's runaway attempt all provide additional evidence to support the determination that a residential program other than DJJ would be inappropriate.

In sum, we find substantial evidence to support the juvenile court's commitment order, and we reject minor's argument that the order was an abuse of discretion.

## DISPOSITION

The juvenile court's January 15, 2021 dispositional order committing A.R. to the Division of Juvenile Justice for a maximum term of confinement of 30 months is affirmed.


MOOR, J.


We concur:


RUBIN, P. J.


KIM, J.

13